## CLAUDE LAWHON v. STATE

No. 27,959. February 8, 1956.

Appellant's Motion for Rehearing Overruled
(Without Written Opinion) June 13, 1956.

*Martin & Shown* and *King C. Haynie,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant and one James R. Campbell were charged by indictment with assault with intent to murder with malice, alleged to have been committed upon James Parnell Roy. Severance was granted and the case against Campbell being dismissed, appellant Lawhon was alone on trial.

The court submitted only aggravated assault and simple assault, and the jury returned the following verdict: "We, the jury, find the Defendant guilty of aggravated assault and assess him to two (2) years and a fine of five hundred dollars ($500.00)."

Construed in connection with the court's charge and the fact that the sufficiency of the verdict was not questioned in the trial court, we overrule the contention raised in appellant's brief that the verdict is fatally defective and will not support a judgment of conviction.

Winters v. State, 139 Tex. Cr. R. 328, 139 S.W. 2d 789, would appear to support our conclusion that the verdict here should not be condemned as requiring too much interpolation. See also Moreland v. State, 127 Tex. Cr. R. 470, 77 S.W. 2d 690; Wilcox v. State, 68 Tex. Cr. R. 138, 150 S.W. 898; and Ross v. State, 110 Tex. Cr. R. 285, 7 S.W. 2d 578.

Appellant next contends that the evidence is insufficient to support a finding by the jury that an assault was committed by the use of means calculated to inflict great bodily injury.

The prosecuting witness testified that he was a witness in a trial in which appellant was the defendant; that in the courtroom prior to the trial, appellant looked at him and made "some kind of a statement, like you will be sorry, better watch out, or something to that effect;" that after the trial and as he was walking to the door, appellant said: "I would like to stick a stick of dynamite in your end and light it;" that as he started up the street appellant and James R. Campbell were coming toward him together, and one of them, he thought Campbell, "Hollered * * * You God-damn son-of-a-bitch we will teach you to testify, or something to that effect."

According to the prosecuting witness, Campbell struck him with his hand and knocked him into the street. "Well, I rolled and tumbled out into the middle of the street. * * * Capitol

Avenue * * * They were kicking the hell out of me. * * * they kicked me in the chest and in the back and down here, and then I blacked out and the next thing I remembered I looked up and saw a car run up there and stop all of a sudden."

The prosecuting witness also testified that he made no attempt to strike appellant, "I was laying on the ground and they were kicking me * * * I hollered for help * * * I really don't know what I said; when you are down like that and somebody stomping you * * * My right side was paralyzed; I couldn't hardly move my right side."

On cross-examination he further testified: "I know they were both hitting and kicking me — that's when I blacked out when I got kicked."

Bertha Yoakum, an employee of Harris County, testified that as Campbell was leaving the courtroom she heard him say: "Let me put my hands on that son-of-a-bitch and I'll kill him."

The witness Steinman testified that appellant said to him: "I'd like to set a stick of dynamite under that little son-of-a-bitch."

Bus driver Charles E. Reed testified that as the three came around a school bus "the big fellow (identified as Campbell) was hitting him (the prosecuting witness) and the little fellow (appellant) finally got him down in the street. * * * He (appellant) was behind the big fellow, and when the big fellow got the little one down by beating him over the head, well, he come up and kicked him two or three times in the side. * * * the little fellow on the ground * * * he was just hollering. * * * I never did see him hit anybody. * * * He couldn't get up out of the street so I picked him up and brought him over to the sidewalk so he wouldn't get run over and then the Harris County Emergency Corp arrived and they took over then."

On cross-examination the witness Reed further testified that the "big fellow" (Campbell) was hitting and kicking the prosecuting witness "he was kicking him in the head;" at first, while he was standing up, the big fellow "kicked him (the prosecuting witness) in the seat of his britches."

Appellant and Campbell, after kicking him, left the prosecuting witness in the street in an unconscious condition and

ran. A bystander failed in an attempt to catch appellant but Campbell was overtaken and arrested.

Roy, the injured party, was taken to the hospital where he was examined by Dr. Robert O. Moers who testified at the trial. Dr. Moers described the injured party as about 5 feet 10 inches in height, weighing 150 pounds. He described his injuries as "a severe contusion about four by six inches" in the vicinity of the right lateral chest wall, the region where are located "first the ribs and then the lungs and the liver."

Dr. Moers was then asked: "Being kicked and stomped in the same area of his chest as you examined on James Roy by a person the size of Campbell, the man that you saw walk to the door and by a man the size of this defendant that you saw over here, with ordinary shoes on their feet, could that be a means calculated to produce death or great bodily injury?" and he answered yes.

On cross-examination he was asked if he meant that it would be remotely possible but hardly probable that the kicking and stomping by a man of Campbell's size could produce death or serious bodily injury, to which he answered: "No, sir, I did not. I meant by the statement * * * I didn't mean to emphasize the *could* any more than the it. In the practice of medicine—in my practice I have seen cases where serious injury and death has been caused by stomping and kicking. That was the way in which I meant to answer the question, sir."

Appellant objected to the first quoted question before it was completed to Dr. Moers because of the inclusion of the word "stomp."

Testimony of the prosecuting witness wherein he used the word "stomp" in referring to the assault upon him has been mentioned.

In the rebuttal the state offered the testimony of Frank Cravin to the effect that after the assault he saw what appeared to be "a foot mark, a scuff mark" across the prosecuting witness' white shirt.

The question as finally propounded was asked and answered without further objection.

In view of the testimony mentioned, the overruling of the objection mentioned does not constitute reversible error.

Dr. Calvin D. Campbell also examined the prosecuting witness and, Campbell having been brought into the courtroom, expressed the opinion that a person of the prosecuting witness' build being kicked in the area of the chest by a person the size of appellant and a person the size of Campbell, with ordinary shoes on and while the person kicked was on the ground, could be a means calculated to produce death or great bodily injury.

To this question and answer appellant objected on the ground that the proper predicate had not been laid, and that the doctor did not know "what the physical condition of the man is, whether he is a man of ordinary strength, but he is determining entirely his ability by his sight and appearance here at this time."

No error is shown by this bill.

Appellant's counsel did not see fit to cross-examine Dr. Campbell and show if he could that the opinion expressed in answer to the question propounded was not well founded, or was of no weight. We hold that it was not essential that the doctor, as a predicate for his opinion being admitted, be required to show that he had information as to the physical condition of appellant or of Campbell. He observed the two men and examined the prosecuting witness and observed the injuries inflicted upon him.

No question is before us as to the admissibility of the doctor's opinion except as against the objection mentioned.

In his brief appellant stresses the fact that the doctor did not express the opinion that the means used in the making of the assault, that is the kicking by two men of the size and appearance of appellant and his co-principal, while the person kicked in the vicinity of the lungs and liver was on the ground, *was* calculated to produce death or great bodily injury but only that it *could* be.

Aggravated assault as submitted in the court's charge required a finding by the jury that the assault was committed with premeditated design and by the use of means calculated to inflict great bodily injury. The question of whether the kicking constituted such means was for the jury.

The jury had before them the fact that the injured party was assaulted by two men, kicked in the side, on the head and other parts of the body, and left unconscious in the middle of the street; they had the opinion of the doctors that such kicking, with ordinary shoes on, by two men of the size and appearance of the two who made the assault, could be a means calculated to produce death or great bodily injury.

That the proof shows the assault was premeditated is not questioned.

We find the evidence sufficient to sustain the jury's finding that the assault was committed by the use of means calculated to inflict great bodily injury.

The judgment is affirmed.